In re Marilyn **THOMAS**, Debtor.

Bankruptcy No. 93–13649–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

May 11, 1995.

D. Jean Ryan, Law Offices of D. Jean Ryan, P.A., Miami, FL, for Marilyn Thomas, debtor.

Stuart I. Levin, Stuart I. Levin, P.A., Miami, FL, for Southern Markey, Inc. d/b/a Sunkissed Pools.

Robert L. Roth, Standing Chapter 13 Trustee, Miami, FL.

*MEMORANDUM DECISION SUSTAINING DEBTOR'S OBJECTION TO CLAIM FILED BY SOUTHERN MARKEY, INC. d/b/a SUNKISSED POOLS*

A. JAY CRISTOL, Chief Judge.

**THIS CAUSE** came on before the Court on April 12, 1995 for an evidentiary hearing on the Debtor's objection to the proof of claim filed by Southern Markey, Inc. d/b/a Sunkissed Pools, and upon the Claimant's response thereto, and the Court having observed the candor and demeanor of the witnesses, heard the testimony and examined the evidence submitted, considered the argument of counsel (and having requested the submission of simultaneous Memorandum Decisions within 10 days of this hearing and having fully considered same), the Court does hereby enter the following Memorandum Decision:

The Court finds the testimony of both the Debtor and of the President of Sunkissed Pools (hereinafter "Sunkissed") to be credible. That testimony establishes that the parties had an oral agreement for the installation of a pool heater on the Debtor's premises. The President of Sunkissed testified that the price for this service was to be $4,000.00. The Debtor does not dispute this number, so the Court finds that this is the agreed upon price.

Further, the Debtor does not dispute that "a large unit" was placed outside her home on the driveway. However, the delivery slip submitted into evidence by Sunkissed is not signed by the Debtor, but by a "Nancy Thomas". The Debtor testified she does not know a Nancy Thomas.

At this juncture the testimony collides. The Debtor testified that upon seeing that the unit had been placed in her driveway she called Sunkissed, advised them that the neighborhood was unsafe and that they needed to move the unit. She further testified that the unit was too large for her to personally move or secure. Finally, the Debtor testified that the unit stayed upon her driveway for approximately four days and when she found it missing and called the company to advise of same, she was told "not to worry".

The President of Sunkissed testified that he did not know who signed for the unit; that no such phone calls were received from Mrs. Thomas; and that he returned to the premises the day after the delivery to install the unit and found it missing.

While these two conflicting views of the events that occurred are worrisome, they are not controlling or truly relevant to this Court's ruling. The real issue raised here, and which is controlling over whether Sunkissed Pools has a claim in this case, is whether the pool heater was "delivered" and who had the risk of loss at the time the pool heater disappeared.

█ At the onset the Court finds that the parties both contemplated that the Debtor was purchasing an "installed" pool heater as opposed to purchasing just a pool heating unit. Accordingly, the Court finds that it is clear from the facts as presented, that "delivery", in the legal sense, did *not* occur when the unit was placed on the Debtor's driveway. In a case very similar to the facts presented here, the Maryland Court of Appeals determined that where a buyer purchased a generator that was also to be installed and tested by the seller, and damage occurred to the generator at the buyer's premises before the generator was installed and tested, that there had been no "delivery." *See William F. Wilke, Inc. v. Cummins Diesel Engines, Inc.,* 252 Md. 611, 250 A.2d 886, 887–90 (App.Ct.1969) (cited in 45

Fla. Jur.2d at 410 (Fla.Co-op.1984)). Installation and testing were material terms of the contract between the parties, and absent the happening of these events, the Maryland Court determined that no "delivery" occurred. *See id.*

Therefore, in the case at bar, given the fact that both witnesses testified that the Debtor here had purchased an "installed" pool heater, and that the pool heater had not been installed as agreed and contracted for, this Court finds that there simply was no delivery by the seller. Further, because there was a nonconforming delivery, the risk of loss always remained with the seller, and never shifted to the Debtor. *See* 45 Fla. Jur.2d at 410 (Fla. Co-op.1984) (citing to *Wilke, supra*).

Under Florida Statute § 672.510(1) the seller (here Sunkissed) cannot shift the risk of loss to the buyer (the Debtor herein) unless the seller's actions conform with all the conditions resting on him under the contract. Since the Debtor contracted for an installed pool heater and the parties concede the unit was never installed, the seller did not conform with all the conditions of the contract, and the risk of loss remained with Sunkissed.

Accordingly, the Court finds that the risk of loss never passed to the Debtor, that the risk of loss remained with Sunkissed, that the Debtor's objection to Sunkissed's claim is sustained, and that Sunkissed's claim is hereby stricken.

**DONE AND ORDERED.**